1
2
3
4
5
6
7                IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
WILBERT RADFORD,                          No. C-10-00745 EDL
10
          Plaintiff,
11
     v.
12
UNION HERE LOCAL 2,
13
          Defendant.
14  _____/

15
WILBERT RADFORD,                          No. C-10-2338 EDL
16
          Plaintiff,
17                                        **ORDER GRANTING DEFENDANTS'**
                                          **MOTIONS FOR SUMMARY JUDGMENT**
18
     v.
19
ST. REGIS HOTEL,
20
          Defendant.
     _____/
21

22       These related actions stem from Pro Se Plaintiff Wilbert Radford's termination from his

23  employment as a cook at the St. Regis Hotel in San Francisco.  In Radford v. St. Regis Hotel, C-10-

24  745 EDL, Plaintiff sued his former employer, the St. Regis Hotel, for race discrimination and

25  retaliation arising out of his progressive discipline and termination.  In Radford v. Unite Here Local

26  2, C-10-2338 EDL, Plaintiff sued his union, Unite Here Local 2, for race discrimination arising from

27  the union's alleged failure to adequately represent him in appealing his discriminatory discipline and

28  discharge by St. Regis Hotel.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Defendants in both cases have moved for summary judgment.  Plaintiff did not file a timely

2    opposition, but after the filing deadline, he filed a ten-page unsworn statement regarding his case

3    with over one hundred pages of unauthenticated exhibits.  The Court construed this filing as

4    Plaintiff's opposition and gave Defendants leave to file reply briefs, which they did.  Defendants

5    also filed objections to Plaintiff's evidence.  The Court held a hearing on June 21, 2011.  For the

6    reasons stated at that hearing and in this Order, the Court grants Defendants' motion for summary

7    judgment.

8    The Court is aware that navigating the court system is difficult for litigants acting without a

9    lawyer.  Here, even though Plaintiff did not succeed on the merits of his case, the Court was

10   impressed with Plaintiff's tenacity and ability to communicate in an articulate and dignified manner

11   with the Court.  The Court understands that Plaintiff strongly believes that he was wronged by these

12   Defendants, and that the severity of the disciplinary action here, termination, was disproportionately

13   harsh.  However, harsh treatment by itself is not against the law.  Even if the Court had accepted all

14   of Plaintiff's inadmissible evidence, the treatment of Plaintiff by the Hotel and the Union was not

15   against the law.

16   **Objections to evidence**

17   Both Defendants filed objections to Plaintiff's filings. The Union and the Hotel objected to

18   all of the exhibits attached to Plaintiff's opposition on the ground that they are not properly

19   authenticated.  See Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) ("We have repeatedly

20   held that unauthenticated documents cannot be considered in a motion for summary judgment.").

21   Because Plaintiff has not authenticated any of the exhibits by affidavit or declaration, the Union's

22   objections are sustained.

23   The Hotel also objected to the entire opposition on the ground that it is unsworn.  See Fed. R.

24   Civ. P. 56(c)(4) (stating requirements of affidavit or declaration on SJ).  Because Plaintiff's

25   opposition is not sworn under the penalty of perjury, it is not proper evidence.  Because Plaintiff is

26   pro se, the Court will give him benefit of the doubt and will assume, for purposes of this motion, that

27   he could swear to certain facts contained in the statement about which he has personal knowledge.

28   The Hotel also objects to the majority of statements that Plaintiff makes in his unsworn statement.

1    The Hotel's hearsay and authentication objections are well-taken, and those objections are sustained.

2

3    **Facts relating to the Hotel**

4        Defendant Starwood Hotels and Resorts operates the St. Regis Hotel in San Francisco.

5    Fisicaro Decl. ¶ 3.  The Hotel hired Plaintiff on July 17, 2006 as a station cook.  Id. ¶ 4; see also

6    Pl.'s Statement at 1, Ross Decl. Ex. 1 at 53-55.  A station cook is a highly compensated, trained

7    cook who is able to work every station in a kitchen and, at times, supervises the work of lesser

8    trained cooks.  Fisicaro Decl. ¶ 4.  Plaintiff worked in the Hotel's culinary department and the

9    Vitrines restaurant.  Id. ¶ 5.

10        On August 25, 2006, Plaintiff received a disciplinary warning stating that he was failing to

11   comply with the time and attendance requirements of the Hotel, including timely punching in and

12   out for breaks.  Ross Decl. Ex. 1 at 110-112.  Plaintiff agreed with his supervisor's description of the

13   time clock incidents and he felt that his supervisor was being fair with him because he had "no

14   excuse" and at the time, it was a "recurring problem" with him.  Id. at 111.

15        On January 25, 2007, Plaintiff received a documented verbal warning stating that he did not

16   follow the Hotel's required time and attendance policies on three separate occasions.  Fisicaro Decl.

17   ¶ 7; Ex. A.  Plaintiff acknowledged receiving this warning and he had no reason to dispute his

18   supervisor's assessment of his time clock problems.  Ross Decl. Ex. 1 at 115-16; Oliviera Decl. Ex.

19   G at 115-16.  .

20        On February 22, 2007, Plaintiff received a written warning stating that he failed to comply

21   with time and attendance policies on two separate occasions.  Fisicaro Decl. ¶ 8; Ex. B.  Plaintiff

22   acknowledged receiving this warning and he had no reason to dispute his supervisor's assessment of

23   his time clock problems.  Ross Decl. Ex. 1 at 118-19.  Plaintiff did not believe that the January and

24   February 2007 disciplinary notices were motivated in any way by his race.  Id. at 119; Oliviera Decl.

25   Ex. G at 117.

26        On June 23, 2007, Plaintiff received a one-day suspension for not following the Hotel's time

27   and attendance policies.  Fisicaro Decl. ¶ 9; Ex. C.  Plaintiff acknowledged receiving this suspension

28   and that it was related to his time clock problems, and that he was still having problems with the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    time clock.  Ross Decl. Ex. 1 at 121-22; Oliviera Decl. Ex. G at 121-22.

2        On August 11, 2007, Plaintiff had an oral altercation with his supervisor, after which he

3    complained to the Hotel's Human Resources department that he was being treated unfairly by his

4    supervisor and was not receiving proper training.  Fisicaro Decl. ¶ 18.  The Hotel investigated the

5    incident and found no evidence that Plaintiff had been singled out by his supervisor.  Id.; Ross Decl.

6    Ex. 1 at Ex. 9.  There was no contention of discrimination in that incident.  Fisicaro Decl. ¶ 18.

7    Thereafter, Human Resources did not take any disciplinary action and Plaintiff was paid for the days

8    that he was suspended.  Ross Decl. Ex. 1 at 129.  Plaintiff thought this was a fair resolution.  Id. at

9    130.

10        On September 13, 2007, Plaintiff was suspended from work for three days because he did not

11    complete his work assignments and did not follow the Hotel's policies on two separate occasions in

12    the same week.  Fisicaro Decl. ¶ 10; Ex. D; Pl's Statement at 1; Ross Decl. Ex. 1 at 236.  In the first

13    instance, Plaintiff failed to complete his set-up items required to prepare his work station, and on the

14    second occasion, he made himself a specialty coffee when there were two pending tickets for meal

15    orders awaiting preparation.  Id.  Plaintiff acknowledged having received this suspension for making

16    himself an espresso.  Ross Decl. Ex. 1 at 142; Oliviera Decl. Ex. G at 141, 154-55 (Plaintiff

17    understood that this suspension was part of the progressive disciplinary policy at the Hotel).

18        On November 2, 2007, Plaintiff received a five-day suspension for not following his

19    supervisor's directions on two events in the same week.  Fisicaro Decl. ¶ 11; Ex. E; Pl.'s Statement

20    at 1.  In the first instance, Plaintiff failed to follow instructions in the preparation of a soup, resulting

21    in the loss of product and delayed service.  Id.  In the second instance, Plaintiff incorrectly prepared

22    Caesar salads and when the error was identified, he still plated the items for service.  Id.  Plaintiff

23    acknowledged having received this suspension and he disagrees with the factual basis for it, arguing

24    that he got the soup out on time, but admitting that he used the wrong salad dressing.  Ross Decl. Ex.

25    1 at 167, 169; Oliviera Decl. Ex. G at 159.  Plaintiff believes he was suspended because sous chef

26    Connie DeSousa did not like the way he was cooking the onions for French onion soup.  Id. at 167-

27    68.

28        On December 1, 2007, Plaintiff failed to follow his supervisor's directions in the preparation

**United States District Court**
For the Northern District of California

of the day's service and caused a soup to not be ready for the start of the lunch service.  Fisicaro Decl. ¶ 12; Ex. F; Pl.'s Statement at 1; Ross Decl. Ex. 1 at 95.  This event led to Plaintiff's termination.

According to the Hotel, Plaintiff did not complain about discrimination during his employment with the Hotel.  Fisicaro Decl. ¶ 20; Oliviera Decl. Ex. G at 101 (Plaintiff testified that he did not tell anyone at the Hotel that he believed he was being discriminated against and instead "kept it private."); Id. at 109.  Plaintiff testified that no one at the Hotel made any comments to him that he found to be offensive or derogatory or motivated by race.  Oliviera Decl. Ex. G at 64. Plaintiff believes that the Hotel's conduct was discriminatory because there were three African-American employees at Vitrines and all were terminated within seven months.  Oliviera Decl. Ex. G at 86.  The two other employees that Plaintiff alleges were also treated unfairly because they are African-American are Hubert Saintil and Kenyan McCarthy.

Plaintiff alleges that Saintil, a busman, was terminated on the eighty-ninth day of his ninety-day probation for sub-standard performance, but according to Plaintiff, Saintil believed he was not treated fairly.  Pl.'s Statement at 4.  The Hotel states that Saintil worked as a server attendant in 2007 and was terminated on December 8, 2007 before the end of his ninety-day probation period for poor performance.  Fisicaro Decl. ¶ 22.  Plaintiff testified that Saintil told Plaintiff that Saintil did not agree with his termination and that he was being falsely accused of leaving the floor without authorization.  Oliviera Decl. Ex. G at 192.

Plaintiff alleges that McCarthy was a manager who transferred to the Vitrines restaurant from room service, and he was employed for only three months and was fired for insubordination. Pl.'s Statement at 4.  According to the Hotel, McCarthy was an Outlet Manager at the Hotel in 2008, and was progressively disciplined for time and attendance reasons and insubordination.  Fisicaro Decl. ¶ 23.  McCarthy resigned his employment in June 2008.  Id.  Plaintiff testified that he never had a conversation with McCarthy about why he left McCarthy left the Hotel.  Oliviera Decl. Ex. G at 191.  Neither DeSousa nor Executive Chef John Jackson, both of whom supervised Plaintiff, supervised Saintil or McCarthy.  Id.; Oliviera Decl. Ex. G at 192.  The Hotel states that neither Saintil nor McCarthy complained or race discrimination during their employment.  Fisicaro Decl. ¶

United States District Court
For the Northern District of California

24.

**Facts relating to the Union**

Defendant Unite Here Local 2 is the collective bargaining representative of hotel and restaurant employees in San Francisco, including employees at the Hotel. Wirshing Decl. ¶ 2. The wages, hours and conditions of employment for represented workers are governed by a collective bargaining agreement (CBA), which provides the grievance procedure to be followed by Local 2 and employers who are signatories to the CBA. Id.; Ex. A (grievance procedure). Step three of the grievance procedure provides for a Grievance Mediation hearing. Id. ¶ 3. The purpose of the hearing is to provide both sides with a realistic evaluation of the merits of a grievance to assist in achieving an appropriate resolution. Id. Local 2 gives great weight to a mediator's assessment when evaluating grievances. Id. ¶ 4. When the merits of a grievance are weak and the likelihood of prevailing at arbitration is slim, Local 2 will generally accept the mediator's opinion and will not pursue arbitration of the grievance after conducting an independent review of the facts and the contract. Id.

According to the collective bargaining agreement with Unite Here Local 2, at each stage of the disciplinary process, Plaintiff was given the opportunity to explain his position during meetings with Human Resources and a union representative. Fisicaro Decl. ¶ 15. The first union representative was Lorraine Powell, and when Ms. Powell took a leave of absence, Maria Vivanco was the union representative. Id. The union grieved Plaintiff's three-day and five-day suspensions and his termination at the same time. Id. ¶ 16; Wirshing Decl. ¶ 5; Ross Decl. Ex. 1 at 196. Plaintiff has no complaints about how Powell put together the grievance. Ross Decl. Ex.1 at 196. On January 10, 2008, Gregory Lim, through the Federal Mediation and Conciliation Service, recommended upholding Hotel's discipline and termination of Plaintiff. Fisicaro Decl. ¶ 16; Wirshing Decl. ¶ 5; Ross Decl. Ex. 1 at 198. During the mediation, Plaintiff was not prevented from saying anything about his case. Ross Decl. Ex. 1 at 199. The mediator communicated to Plaintiff and Local 2 that Plaintiff's case was very weak. Wirshing Decl. ¶ 5; Ross Decl. Ex. 1 at 198 (Plaintiff testified that mediator told him that it did not look good for Plaintiff). The mediator also told Local 2 that this was a classic case of progressive discipline. Id. Local 2's in-house counsel

United States District Court
For the Northern District of California

independently reviewed Plaintiff's case and came to the same conclusion. Id. On that basis, the union did not pursue Plaintiff's grievance to arbitration. Id.; Fisicaro Decl. ¶ 16. Local 2's in-house counsel wrote to Plaintiff notifying him that the case was closed. Wirshing Decl. ¶ 5; Ross Decl. Ex. 1 at 248.

Following the mediation, Local 2's in-house counsel spoke to Plaintiff over the phone, and Plaintiff told her that he did not want to accept the offer made at the mediation that he resign his employment from the Hotel rather than be terminated. Id. ¶ 6; Ross Decl. Ex. 1 at 211-12. Plaintiff demanded that Local 2 provide him with the mediator's written decision, but counsel explained to Plaintiff that no written decision had been issued and that it was no longer the mediator's practice to issue written decisions. Wirshing Decl. ¶ 7; Ross Decl. Ex. 1 at 214 (Plaintiff testified that he received a letter from Local 2 in January 2008 stating that the reason that Local 2 did not take his case to arbitration was because of the mediator's decision); Ross Decl. Ex. 1 at 229-30 (Plaintiff testified that he believes that the union failed to take his case to arbitration based on his race because he was denied a written decision, even though counsel told Plaintiff that the mediator no longer issued written decisions). Plaintiff states that Local 2 refused to give him the written decision, and Plaintiff believes that Local 2's in-house counsel was lying about the lack of a written decision, although Plaintiff could not testify to any factual basis for that belief. Ross Decl. Ex. 1 at 213, 231-232. Plaintiff conceded that he has no knowledge whether an opinion was or was not written for his case. Id. at 232. Plaintiff has no knowledge that Local 2 handled his grievance differently than any other grievance because of his race. Ross Decl. Ex. 1 at 209. Plaintiff testified that neither Vivanco, the Local 2 representative who handled the mediation, nor Wirshing, Local 2's in-house counsel, made any racially hostile comments to Plaintiff during the grievance meetings, and that no one at Local 2 ever commented on his race. Ross Decl. Ex. 1 at 223-24. The EEOC complaint was the only complaint he ever filed against the Local 2 asserting race discrimination. Ross Decl. Ex. 1 at 233.

Plaintiff testified at his deposition that he knew of the case of a Caucasian employee, Casey Lloyd, who was terminated after being suspended three times, and that Local 2 took Lloyd's case to arbitration. Ross Decl. Ex. 1 at 224. Plaintiff, however, was not told this by Lloyd and instead

heard it from someone else.  Id. at 225.  Eventually, Plaintiff admitted that he did not know one way or the other whether Local 2 took Lloyd's case to arbitration.  Id.  Plaintiff also admitted that he had no knowledge one way or the other as to whether Lloyd had been suspended three times before being terminated.  Id.  Plaintiff admitted that he had no knowledge one way or the other about any involvement by Local 2 in Lloyd's case.  Id. at 226.

**Legal standard**

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

**The Hotel's Motion for Summary Judgment**

Plaintiff alleges claims for race discrimination and retaliation against the Hotel.

**1.      Race discrimination under Title VII**

**A.      Legal Standard**

Motions for summary judgment in employment discrimination actions are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chuang v. University of California Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (citing McDonnell Douglas). A plaintiff alleging disparate treatment must first establish a triable issue of fact as to a prima facie case of discrimination by showing: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. See id. The proof necessary for a plaintiff to establish a prima facie case is "minimal" and need not even rise to the level of a preponderance of the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)). The plaintiff need only offer evidence that "gives rise to an inference of unlawful discrimination," arising either under the McDonnell Douglas presumption or by more direct evidence of discriminatory intent. Wallis, 26 F.3d at 889.

Once a plaintiff has sufficiently shown a prima facie case of discrimination, the defendant is entitled to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. See Reeves, 530 U.S. at 142 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The defendant's burden at this stage is one of production, not persuasion. The court may not make a credibility assessment. See Reeves, 530 U.S. at 142 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the claimed adverse action, the McDonnell Douglas framework and its presumption of discrimination disappears, and the plaintiff is left to prove by a preponderance of the evidence that the reasons offered by the defendant are merely a pretext for discrimination. See Reeves, 530 U.S. at 143 (citations omitted); Chuang, 225 F.3d at 1124 (the plaintiff must show that the articulated reason is

United States District Court
For the Northern District of California

pretextual, "'either directly by persuading a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'") (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)); Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated remains at all times with the plaintiff. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Burdine, 450 U.S. at 253); see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998) ("In those cases where direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex.").

**B.      Discussion**

**i.       Prima facie case**

Here, there is no direct evidence of race discrimination. Plaintiff testified that no one at the Hotel made any derogatory comments about him regarding his race. Oliviera Decl. Ex. G at 64 ("Q: Has anyone at the St. Regis made any comments to you that you found to be offensive or derogatory and that  you believed were motivated by your race? A: No.").

Further, Plaintiff has not supported his prima facie case by indirect evidence. Specifically, Plaintiff has not provided any admissible evidence that similarly situated non-African-American employees were treated differently. See Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003) (holding that the district court did not err in finding that the plaintiff failed to establish a prima facie case of discrimination because he had not shown that similarly situated employees outside of his protected class were treated differently). Plaintiff stated in his deposition that he believed that Executive Chef Jackson "did not want Blacks working in the five-star restaurant." Oliviera Decl. Ex. G at 189. The basis for Plaintiff's belief is that Saintil, McCarthy and Plaintiff, who are all African-American, were terminated or left their employment within seven months. Id. However, Plaintiff testified that he never had a conversation with McCarthy regarding his reasons for leaving

**United States District Court**
For the Northern District of California

1   the Hotel, and that he learned about McCarthy's situation from a third person, which is inadmissible

2   hearsay.  Id. at 191-92.   Moreover, McCarthy was not supervised by DeSousa or Jackson.  Fisicaro

3   Decl. ¶ 23.   Plaintiff also testified that he talked with Saintil about his termination, and that Saintil

4   told Plaintiff that Saintil was falsely accused of leaving the floor without authorization, but this is

5   inadmissible hearsay.  Also, Plaintiff acknowledged that Saintil was not supervised by DeSousa or

6   Jackson. Oliviera Decl. Ex. G at 192.  Further, the Hotel has presented uncontroverted evidence that

7   Saintil was terminated for poor performance during his probation period and that McCarthy was

8   progressively disciplined for time and attendance issues and insubordination.  Fisicaro Decl. ¶¶ 22-

9   23.  Neither of these individuals complained during their employment of race discrimination.  Id. ¶

10  24.  Moreover, Plaintiff has not shown, as required for his prima facie case, that non-African-

11  American employees were treated differently.

12       In Plaintiff's opposition, he states that "other cooks have made similar mistakes without the

13  same consequences, suspension, investigation and termination."  Pl.'s Statement at 3.  But Plaintiff

14  fails to identify any other cooks who were treated more favorably in his statement or elsewhere.

15  Further, Plaintiff states that a Caucasian employee, Casey Lloyd, was allowed to return to work after

16  it was discovered that he had not received a ninety-day evaluation.  Pl.'s Statement at 8.  But

17  Plaintiff does not show that this employee was similarly situated to Plaintiff with respect to

18  suspensions or investigations or other documentation.  Nor is there evidence that Lloyd was a station

19  cook.  Plaintiff concludes that there was a "hidden policy" of "no Blacks in Virtines" while he was

20  employed there.  Pl.'s Statement at 10.  But this subjective belief does not establish a prima facie

21  case of race discrimination.

22       Plaintiff has not created a  triable issue of fact as to his prima facie showing of race

23  discrimination.  However, even if Plaintiff had made a prima facie showing, his race discrimination

24  claim fails because Defendant has met its burden of showing a legitimate, non-discriminatory reason

25  for Plaintiff's termination and Plaintiff has not met his burden of establishing a triable issue of fact

26  as to pretext.

27            **ii.      Legitimate, non-discriminatory reason**

28       As described above, the Hotel has provided detailed evidence of the progressive discipline

11

United States District Court
For the Northern District of California

1   used in advance of Plaintiff's termination.  Plaintiff was progressively disciplined over twelve

2   months, and was involved, along with his union representative, in the meetings to discuss the

3   discipline.  Plaintiff argued at the hearing that progressive discipline must be for the same subject

4   matter, but he has provided no evidence in support of his argument.  In addition, a mediator

5   reviewed Plaintiff's grievance and concluded that the suspension and termination should be upheld.

6   Accordingly, the Hotel has met its burden of showing legitimate, non-discriminatory reasons for

7   Plaintiff's termination.

8                   **iii.    Pretext**

9           Plaintiff's disagreement with the progressive discipline and his termination is not enough to

10  create a triable issue of fact of pretext.  See Anthoine v. North Central Counties Consortium, 605

11  F.3d 740, 754 (9th Cir. 2010) ("However, '[a] plaintiff may not defeat a defendant's motion for

12  summary judgment merely by denying the credibility of the defendant's proffered reason for the

13  challenged employment action.'"); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 n.6

14  (9th Cir. 2006) ("A plaintiff may not defeat a defendant's motion for summary judgment merely by

15  denying the credibility of the defendant's proffered reason for the challenged employment action.

16  Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's

17  subjective belief that the challenged employment action was unnecessary or unwarranted.")

18  (citations omitted).  Plaintiff has provided no evidence beyond his subjective beliefs that the Hotel's

19  reasons for his termination are pretextual.

20          Further, even though a showing that the employer treated similarly situated non-African-

21  American employees differently than Plaintiff would be probative of pretext (see Vasquez v. County

22  of Los Angeles, 349 F.3d 634 (9th Cir. 2003)), Plaintiff has not made such a showing.  The only

23  non-African-American employee that Plaintiff mentions is Casey Lloyd, whose employment,

24  according to Plaintiff's argument (but not evidence), was reinstated after he was not given a ninety-

25  day evaluation.  Pl.'s Statement at 8.  But Lloyd is not similarly situated to Plaintiff because they

26  held different positions and it is not clear that they were supervised by the same people.  Also, there

27  is no evidence that Lloyd engaged in the same misconduct as Plaintiff did or that he was subjected to

28  progressive discipline as Plaintiff was.  Plaintiff only states in his opposition that he believes that

United States District Court
For the Northern District of California

Executive Chef Jackson did not want African-Americans in the kitchen.  Plaintiff also stated in his deposition that he has no knowledge of other coworkers' disciplinary records.  Plaintiff's subjective beliefs do  not create a genuine issue of fact as to pretext.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) ("Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is "foolish or trivial or even baseless."'").

Further, Plaintiff's statements about McCarthy and Saintil are not probative of race discrimination.  First, Plaintiff makes several general statements in his opposition about African-Americans at the Hotel: "During the time executive chef John Jackson was at the St. Regis, three Blacks attempted to work at Vitrines," "Hubert Sentil (Busman) was terminated 3 months . . . claims he was not treated fairly," "Kenyon McCarthy who  transferred from Room Service Manager. Problems after he goes to Vitrines, insubordination. . . .," "First black busman . . . first black floor manager . . . first black cook in Vitrines, all did not make it."  Pl.'s Statement at 4.  Plaintiff also states that "Other Black people in the St. Regis encounter similar problems when attempting to transfer or go for a promotion."  Id.  Even if these statements were supported by admissible evidence, there is no indication of how any problem experienced by these individuals was indicative of racial animus.  Second, Plaintiff's hearsay references to other African-American employees, Wiley and Buriks, regarding their "problems" and their feelings of being "ignored" are insufficient, even if they were admissible and viewed in the light most favorable to Plaintiff, to create a triable issue of fact of specific and substantial evidence of pretext.  Third, Plaintiff testified that he never spoke to McCarthy about his separation of employment, and McCarthy, unlike Plaintiff, resigned and was not terminated.  Further, even though Plaintiff testified that he talked to Saintil about Saintil's termination, and even if that constituted admissible evidence rather than hearsay, one instance of an employee who was not supervised by the same decision-makers who may or may not have had the same progressive discipline that Plaintiff had, does not rise to the level of specific and substantial evidence of pretext.  Plaintiff acknowledges receiving progressive counseling (although at the hearing, Plaintiff disputed that he was subject to progressive discipline as he interpreted that theory), and that a union representative was in attendance at all of the discipline meetings.  Oliviera Decl. Ex. G at 115-17; 121-22; 141; 154-55; 159; Pl.'s Statement at 7.  Plaintiff states that his

13

1  "write-ups" were too harsh, but that belief, without more, is insufficient to establish pretext.  See

2  Villiarimo, 281 F.3d at 1063.  Further, even though Plaintiff submitted undated letters beginning:

3  "To whom it may concern," which set forth Plaintiff's disagreement with the discipline he was

4  receiving, those letters are conclusory and unauthenticated, and in any event, do not constitute a

5  specific and substantial showing of pretext.  Plaintiff has provided no evidence to create a  triable

6  issue of fact as to the reasons behind the Hotel's termination decision.  Even viewing all of the

7  evidence in the light most favorable to Plaintiff, he has not met his burden of creating a triable issue

8  of fact as to whether the Hotel's termination decision was pretextual.

9         Accordingly, the Hotel's motion for summary judgment of Plaintiff's race discrimination

10  claim is granted.

11  **2.       Retaliation under Title VII**

12       **A.       Legal Standard**

13         The elements of a prima facie retaliation claim are that:  (1) plaintiff undertook a protected

14  activity; (2) his employer subjected her to an adverse employment action; and (3) a causal link exists

15  between the two events.  See Vasquez v. County of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2004).

16  Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the

17  plaintiff engaged in protected activities and the proximity in time between the protected action and

18  the allegedly retaliatory employment decision."  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.

19  1987).  To show a causal connection, a plaintiff "must make some showing sufficient for a

20  reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in

21  protected activity."  Raad v. Fairbanks N. Star Borough School Dist., 323 F.3d 1185, 1197 (9th Cir.

22  2003).

23         Once a plaintiff produces evidence supporting a prima facie case, the burden shifts to the

24  defendant employer to articulate a legitimate, non-retaliatory reason for the adverse employment

25  action.  Once the employer articulates such a reason, a plaintiff bears the burden of demonstrating

26  that the reason was merely a pretext for the unlawful retaliatory motive.  See Stegall v. Citadel

27  Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003).  A plaintiff can prove pretext with either direct or

28  indirect evidence.  If a plaintiff offers direct evidence of discriminatory motive, a triable issue as to

the actual motivation of the employer is created even if the evidence is not substantial.  When direct evidence is unavailable, however, and the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, specific and substantial evidence of pretext is required to survive summary judgment.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (citing Godwin v. Hunt Wesson, Inc., 150 F. 3d 1217, 1221 (9th Cir. 1998)).

**B.    Discussion**

**i.    Prima facie case**

There is no evidence that Plaintiff engaged in protected activity.  Plaintiff did not oppose an unlawful employment practice during his employment at the Hotel.  Plaintiff did not complain or protest race discrimination to his employer while he was employed.  Oliviera Decl. Ex. G at 109. The first time that Plaintiff contacted the EEOC with respect to his employment was after he was terminated.  Id. at 103.  Plaintiff testified that he did not tell anyone at the Hotel during his employment that he believed he was discriminated against due to his race or color, and in fact, he testified that he "kept it private."  Id. at 101.  There is no evidence that the Hotel was aware from any source of any belief by Plaintiff that he was being treated differently based on his race.  Plaintiff alleged in his complaint that he complained to Human Resources about a lack of training, but he has not provided any evidence that he complained, or complained of racial discrimination.  Thus, Plaintiff has failed to establish a prima facie case because he cannot show that he engaged in any protected activity.  However, even if he could meet his prima facie case, Plaintiff's retaliation claim fails because he cannot establish a triable issue of fact that the Hotel's termination decision was pretextual.

**ii.    Legitimate, non-discriminatory reasons**

As described above, the Hotel has demonstrated a legitimate, non-discriminatory reason for terminating Plaintiff.

**iii.    Pretext**

Plaintiff has failed to show a triable issue of fact of pretext for his termination based on retaliation.  He has no direct evidence of retaliation to show pretext because there is no evidence that Plaintiff engaged in any protected activity or even that the Hotel knew that Plaintiff believed he

suffered discrimination.  As described above, Plaintiff has not presented specific and substantial evidence of pretext to raise a triable issue of fact to rebut the stated reason for his termination.  Thus, Plaintiff has failed to show that a retaliatory reason more likely motivated the Hotel or any indirect evidence tending to demonstrate that the Hotel's proffered explanation for his termination is unworthy of credence.  Having failed to raise a disputed fact demonstrating that Hotel's articulated reason for termination is pretextual, either directly or indirectly, summary judgment is granted as to Plaintiff's retaliation claim.

**The Union's Motion for Summary Judgment**

Plaintiff alleges one claim for race discrimination against the Union based on Plaintiff's allegations that the Union discriminated against Plaintiff based on his race by failing to pursue his case to arbitration after the mediator upheld the termination decision.

**1.      Legal Standard**

The standard burden-shifting framework established in McDonnell Douglas also applies to a Title VII action against a union.  See Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 674 (9th Cir.1988).  A union member can make a prima facie claim of discrimination by introducing evidence that the member "was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute."  Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir. 1982); see also Pejic, 840 F.2d at 674.  As in McDonnell Douglas, such a showing of disparate treatment raises an inference of discrimination "because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations."  Furnco Constr. Corp. v. Waters, 438 U.S. 567, 579-80 (1978).

A prima facie case of discrimination may be established against a union by showing that: "(1) the employer violated the collective bargaining agreement with respect to the employee; (2) the union breached its duty of fair representation by allowing the breach to go unrepaired; and (3) there is some evidence of [illegal] animus among the union."  Beck v. UFCW Local 99, 506 F.3d 874, 885 (9th Cir. 2007) (citing Bugg v. Int'l Union of Allied Indus. Workers of Am., 674 F.2d 595 (7th Cir.1982)).

**United States District Court**
For the Northern District of California

1    If the plaintiff succeeds in establishing a prima facie case of discrimination against the union,

2    the burden of production shifts to the union to articulate a legitimate, non-discriminatory reason for

3    the less favorable treatment. Pejic, 840 F.2d at 674. The union must provide "reasons for its actions

4    which, if believed by the trier of fact, would support a finding that unlawful discrimination was not

5    the cause of the ... action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). Once the

6    defendant produces sufficient evidence to satisfy this burden, "'the McDonnell Douglas framework -

7    with its presumptions and burdens' - disappear[s]," Reeves v. Sanderson Plumbing Prods., Inc., 530

8    U.S. 133, 142-43 (2000) (quoting Hicks, 509 U.S. at 510), and the plaintiff "retains that ultimate

9    burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination."

10   Hicks, 509 U.S. at 508 (internal quotations omitted).

11   The trier of fact may infer the ultimate fact of intentional discrimination from the plaintiff's

12   prima facie case and disbelief of the defendant's explanation for the action. See Reeves, 530 U.S. at

13   147 ("Moreover, once the employer's justification has been eliminated, discrimination may well be

14   the most likely alternative explanation, especially since the employer is in the best position to put

15   forth the actual reason for its decision."); Hicks, 509 U.S. at 511.  However, a trier of fact is not

16   required to infer discrimination even if the employer's proffered explanation is unpersuasive.

17   Reeves, 530 U.S. at 148; see also Hicks, 509 U.S. at 524.

18   **2.    Discussion**

19   **A.    Prima Facie case**

20   The Union argues that Plaintiff cannot establish a prima facie case because there is

21   undisputed evidence that the Union did not breach its duty of fair representation and did not treat

22   Plaintiff less favorably than other employees because of his race.

23   **i.    Breach of duty of fair representation**

24   The duty of fair representation is deferential to a union's judgment and discretion.  If the

25   conduct at issue involves a union's judgment about how best to enforce a collective bargaining

26   agreement or handle a grievance, a union cannot be found to have breached this duty unless its

27   conduct is discriminatory or in bad faith.  See Marino v. Writers Guild of America, East, Inc., 992

28   F.2d 1480, 1486 (9th Cir. 1993) ("This court engages in a two-step analysis to determine whether a

1    union has breached the duty of fair representation. First, we must decide whether the alleged union

2    misconduct 'involved the union's judgment, or whether it was "procedural or ministerial."'  Second,

3    if the conduct was procedural or ministerial, then the plaintiff may prevail if the union's conduct was

4    arbitrary, discriminatory, or in bad faith. However, if the conduct involved the union's judgment,

5    then 'the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.'")

6    (quoting Burkevich v. Air Line Pilots Ass'n, Int'l, 894 F.2d 346, 349 (9th Cir.1990) (citations

7    omitted)); see also Vaca v. Sipes, 386 U.S. 171, 190 (1967) (to establish a breach of the duty of fair

8    representation, a union member must show that the union's conduct towards him was "arbitrary,

9    discriminatory, or in bad faith").

10          Under this standard, there is no triable issue of fact regarding the Union's decision not to

11   pursue Plaintiff's grievance to arbitration.  The Union filed a grievance on Plaintiff's behalf

12   protesting the three suspensions and his termination.  Wirshing Decl. ¶ 5; Fisicaro Decl. ¶ 15.  The

13   Union represented Plaintiff at the grievance hearing.  Id.  There is no evidence that the Union's

14   decision not to pursue the arbitration was discriminatory or in bad faith.  Plaintiff testified that the

15   mediator told Plaintiff that it did not look good for Plaintiff.  Ross Decl. Ex. 1 at 198.  The mediator

16   told the Union that Plaintiff's case was one of classic progressive discipline, indicating that

17   Plaintiff's case was weak.  Wirshing Decl. ¶¶ 5, 8.  Further, Plaintiff concedes that he received a

18   letter from the Union explaining its decision not to arbitrate.  Pl.'s Statement at 9.  There is

19   undisputed evidence that the Union considered the case independently and reached the decision not

20   to arbitrate.  Wirshing Decl. ¶ 5; Ex. B.  Although Plaintiff believes that his case should have gone

21   to arbitration, there is no "absolute right to have his grievance taken to arbitration."  Evangelista v.

22   Inlandboatman's Union of the Pacific, 777 F.2d 1390, 1395 (9th Cir. 1985); see also Patterson v.

23   Teamsters Local 959, 121 F.3d 1345, 1349-50 (9th Cir. 1997) (""It is for the union, not the courts, to

24   decide whether and in what manner a particular grievance should be pursued.") (internal citation

25   omitted).

26          Further, Plaintiff appears to argue that the Union breached the duty of fair representation by

27   "support[ing] the Hotel's discriminatory position regarding [his] discipline and discharge and

28   refus[ing] to take [his] appeal to arbitration."  Pl.'s Statement at 1.  Plaintiff also states that the

**United States District Court**
For the Northern District of California

1   Union "refused to provide [him] with a copy of the mediator's report used to justify denying [him]

2   arbitration." Id.  In addition, Plaintiff's opposition asks questions that he does not answer with

3   respect to the Union, including: "Why did the Union change their support for me?  Why was the

4   grievance filed?"  Pl.'s Statement at 8.  The undisputed evidence, however, shows that the Union did

5   not provide a report from the mediator because there was no report.  Wirshing Decl. ¶ 7.  Plaintiff

6   testified at his deposition as to his belief that the Union's in-house counsel was lying about the

7   absence of a written decision, but he could not testify to any factual basis for that belief.  Ross Decl.

8   Ex. 1 at 213, 231-232.  Plaintiff conceded that he has no knowledge whether an opinion was or was

9   not written for his case.  Id. at 232.

10      Thus, Plaintiff has not raised a triable issue of fact as to his prima facie case of

11   discrimination by the Union based on a breach of the duty of fair representation.

12                    **ii.      Less favorable treatment**

13      Plaintiff stated in his deposition that he believed that the Union discriminated against him

14   when it failed to provide him with a written mediator's report.  Ross Decl. Ex. 1 at 229, 232.  But

15   there is undisputed evidence that no written report was issued, and in fact, Plaintiff finally conceded

16   at his deposition that he did not know one way or the other whether a report was written in this case.

17   Id. at 232.

18      Plaintiff also stated in his deposition that he had knowledge that the Union took the

19   grievance of a Caucasian employee, Casey Lloyd, to arbitration and that Lloyd was similarly

20   situated with multiple suspensions before termination.  Ross Decl. Ex. 1 at 224.  But upon

21   examination, Plaintiff admitted in his deposition that he had no knowledge of whether the Union

22   took Lloyd's case to arbitration and that he had no knowledge as to whether Lloyd had been

23   suspended on multiple occasions before he was terminated.  Ross Decl. Ex. 1 at 225-26.  Plaintiff

24   had no knowledge one way or the other as to the Union's involvement in Lloyd's reinstatement.  Id.

25   at 226.

26      Moreover, Plaintiff testified at his deposition that he had no factual basis for concluding that

27   the Union handled his grievance any differently than grievances of any other union members

28   because of his race.  Ross Decl. Ex. 1 at 209.  There is no such evidence.  Plaintiff's unsworn

**United States District Court**
For the Northern District of California

1   opinions and statements in his opposition do not create a triable issue of fact.  See Cornwell v.

2   Electra Cent. Credit Union, 439 F.3d 1018, 1028 n. 6 (9th Cir. 2006) (stating that a plaintiff may not

3   create a triable issue of discrimination by "relying solely on [his own] subjective belief[.]").

4   Plaintiff has provided no evidence to support his allegation that he received less favorable treatment

5   from the Union based on his race.  Therefore, Plaintiff has not created a triable issue of fact as to a

6   prima facie case of discrimination based on less favorable treatment.  Further, even if Plaintiff had

7   established a prima facie case, his discrimination claim fails because the Union has shown

8   legitimate, non-discriminatory reasons for its actions and Plaintiff has not established a triable issue

9   of fact as to pretext.

10          **B.      Legitimate, non-discriminatory reasons**

11          The Union has provided legitimate, non-discriminatory reasons for not pursuing Plaintiff's

12   grievance to arbitration.  As described above, the undisputed evidence is that at each stage of the

13   disciplinary process, Plaintiff was given the opportunity to explain his position during meetings with

14   Human Resources and a union representative.  Fisicaro Decl. ¶ 15.  The Union grieved Plaintiff's

15   three-day and five-day suspensions, and his termination at one time.  Id. ¶ 16; Wirshing Decl. ¶ 5;

16   Ross Decl. Ex. 1 at 196.  Plaintiff has no complaints about how the Union put together the

17   grievance.  Ross Decl. Ex.1 at 196.  The mediator upheld the Hotel's discipline of Plaintiff and

18   communicated to Plaintiff and the Union that Plaintiff's case was very weak.  Wirshing Decl. ¶ 5;

19   Ross Decl. Ex. 1 at 198.  The mediator also told the Union that this was a classic case of progressive

20   discipline.  Id.  Following the Union's independent review of Plaintiff's case, and based on the

21   mediator's opinion, the Union did not pursue Plaintiff's grievance to arbitration.  Id.; Fisicaro Decl.

22   ¶ 16.  The Union's in-house counsel wrote to Plaintiff notifying him that the case was closed.

23   Wirshing Decl. ¶ 5; Ross Decl. Ex. 1 at 248.

24          **C.      Pretext**

25          Plaintiff has not raised a triable issue of fact as to pretext.  Although Plaintiff would appear

26   to rely on the Casey Lloyd case for pretext, as described above, Plaintiff has no knowledge of

27   whether or how Union handled Lloyd's case.  Plaintiff also appears to rely on the fact that there is

28   no written opinion from the mediator to show pretext.  However, the Union presented evidence that

1    no written report was created by the mediator in Plaintiff's case, and Plaintiff could not dispute this

2    fact, but instead conceded in his deposition that he did not know one way or the other whether a

3    report had been made.  Accordingly, Plaintiff has failed to raise a triable issue of fact as to pretext.

4            Accordingly, the Union's motion for summary judgment is granted because even viewing the

5    evidence in the light most favorable to Plaintiff, he has failed to establish a prima facie case of

6    discrimination and has not created a triable issue of fact as to pretext.

7            **IT IS SO ORDERED.**

8    Dated: June 29, 2011

9                                                              ELIZABETH D. LAPORTE
                                                             United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California